Mr. Tannenbaum. Or Mr. Lindstrom, sorry. Mixed you up. Who represents? I'm Mr. Tannenbaum. Tannenbaum. And I have these mixed up here on the sheet. My apologies whenever you're ready. Good morning, your honors. May it please the court. My name is Adam Tannenbaum and I represent the appellant, Representative Chuck Clemens, in this court's denial of his immunity, both absolute legislative immunity and 11th Amendment immunity. Chuck Clemens has immunity in this suit, which seeks federal judicial control of his own speech on his own online political publications. He has immunity two ways. First, 11th Amendment immunity bars the official capacity suit, including the state law claims. And 11th Amendment, excuse me, legislative immunity bars both the official and the individual capacity claims. These immunities stem ultimately from the lack of any authority that Chuck Clemens has as an individual Florida state legislator to implement or enforce policy for the state, and from the lack of any actual statute policy or implemented, excuse me, or enforced or any authority, authorizing, authorization or direction to Representative Clemens to act regarding the online pages. Don't those two factors that you just mentioned mean that there's not actually an official capacity claim against your client in the first place? I'm sorry, your honor. Can you repeat the question? Is there really an official capacity claim against your client when he's not acting according to any state policy or in any state role, even by your own telling? Isn't this about his actions personally? That's Representative Clemens' argument, that if you're starting with the official capacity aspect and the 11th Amendment immunity as it applies here, 11th Amendment immunity applies in all circumstances when there is a suit in federal court against either the state or state agency. That would include ordinarily state officers acting for the state. That's not always true because you've got the ex parte young fiction. And I was going to point out, your honor, the exception. So ex parte young applies in a narrow sense when there is some either statute being enforced by the state or state agency. It's not a limitation for the officer to be acting in a way that is being challenged as being unconstitutional. That is an exception and it's, as this court has pointed out and as the US Supreme Court has pointed out, it's a fiction. It's a legal fiction dating back to the early 1900s to allow a method for challenging the statute, a statute as being unconstitutional, allowing a way for federal constitutional law and federal statutes to . . . But is that really so when we look at what we said in Lucky v. Harris, where we said all that is required is that the official be responsible for the challenged action? It seems to me in this case where you have alleged viewpoint discrimination, your client is responsible for the challenged action. Yes, and that's the trial court followed that line as well. Well in Lucky, Lucky dealt with the failure of providing adequate indigent legal defense services. And in Lucky, the action that was being challenged, there was an injunctive relief seeking to order additional resources and sufficient indigent legal defense. Notably in Lucky, this court still went through the effort of identifying the statute that authorized the governor and the chief judges and the judges that were being sued in that case, authorizing them to act within the system. So the court still looked to what is the authority that these defendants are acting pursuant to because . . . and the reason that this for that, and the U.S. Supreme Court has also observed this, and Ex Parte Young still goes back to the office . . . it's not just the officer being responsible for his or her own conduct. Of course, ordinarily any person, Chuck Clemens is responsible for the conduct that he engaged in with regard to his own pages. That's not enough. It's was the person acting by virtue of his office, the being challenged. So even in Lucky, the governor and the judges that were being sued there were responsible for administering the justice system and providing indigent defense. So even in Lucky, the court still was looking for that nexus, that connection between the action and the authorizing authority. Let me try to combine Judge Duvina's and Judge Grant's questions into another one. If you are right that there isn't an official capacity suit for the reasons you've articulated, how can your client not be sued in an individual capacity? In other words, he . . . and this doesn't even address the question of remedies, it's just whether he can be sued. Allegedly, this is an official social media account that he operates only in his capacity as a state representative, correct so far? That's the allegation, yes. Which we have to take as true right now, right? If he is using that social media platform as a state representative, why isn't that state action sufficient to allow an individual capacity suit against him? So in other words, I don't think you can have it both ways. I don't think you can say you can't ascribe the state to him because there's no statute or rule on the books telling him what to do in this sort of circumstance, and then also say, but he's also completely absolved on an individual basis. I don't see where you get from point one to point two. And I apologize, I think I now know where Judge Grant was going, so if I went astray, I apologize and thank you, Judge Jordan, for bringing it back to . . . that is the ultimate question here. So the individual capacity suit against Chuck Clemens is still . . . it's not a private rights suit, it's not a defamation claim, it's not some sort of tort action against him. It is still an action against him directed at him for acting under a color of law, but he is a . . . Those suits are filed every day in federal court for an individual who has discretion in an allegedly unlawful way. A police officer who's allowed to use force, but allegedly oversteps his or her bounds and uses excessive force, for example. Why is this case not, at the pleading stage, not exactly like that? And that's the rub. So yes, and I'm . . . when Your Honor mentioned before, but we have to take the allegations as true, you can take the allegations as true, but there's also, as a matter of law, with respect to at least a Florida state representative, a legislator doesn't have any authority to act outside that chamber. It's not apparent or otherwise. It just doesn't . . . He's unlawfully operating this social media account? It's not unlawful, it's his own . . . You just said he has no authority to act outside of the chamber. That's exactly right. It was . . . So he's on his own doing this? Yes, Your Honor, and that is . . . How is he calling it a an official account? Tell me how he gets there. Because it's his own account. Anyone can claim . . . He's using his . . . Okay, so he's using an individual social media account, but trying to clothe it with his representative status to give it sort of more oomph, and yet when he's called to task for doing something improper, he says, ah, it's not really official. It's just mine. I call it an official account, but it's really not official. So whatever I do is just me on my own outside of the chamber. Sure, and . . . That's it? That's what you're saying? Yes, Your Honor, and to go . . . Why doesn't he call . . . Why doesn't he establish a social account that just has his name and doesn't deal with legislative materials or what he's doing for his constituents or what's going on on the floor of the State House or anything like that? The reason is, I would suggest, is because it's more important to have as a representative an account that lets them see what you're doing in your representative capacity, not as the neighbor, you know, who lives two houses down the road. Well, except, Your Honor, the court can't get there without going against Brewster and the other cases that the Supreme Court has identified, and this court, and Yeldell, and in Scott v. Taylor, where this court and the Supreme Court draws a lot . . . draw a line between . . . There's legislative activity on the one side, so committee investigations. That's legislative activity. On the other side is what the U.S. Supreme Court and this court have acknowledged as being political activity, so all those speeches, all the communications that legislators do on a routine basis, communicating with their constituents, sending out newsletters, publications, all of that is expected. It's legitimate. It happens all the time, but this court and the Supreme Court has repeatedly called it political activity. That means that it is Chuck Clemons' personal political speech from beginning to end, from the . . . when he started his account before he was elected, after he was elected. Haven't you just sunk your legislative immunity argument? No, and here's . . . You have. You've said that everything that he did in this case was individual, not on the legislative side. That's right. If you are correct about that, he had . . . whatever the merits may be, and that may be a 12 v. 6 question that's not before us. He doesn't have legislative immunity on the individual capacity claim. But he does, Your Honor, and here's . . . So what I tried to do, and yes, we've claimed all along and explained all along, as a matter of law, Chuck Clemons doesn't have the authority as an individual state legislator to do anything but have his own social media pages, not on behalf of the House, not on behalf of the state. It's his own. He can call it a state representative page. He can call it a state senator page. He can call it anything he wants. It's still his. It's his tableau. It's his presentation that he puts out to the world. If this were anyone else, if it weren't Chuck Clemons' state representative, if it were Chuck Clemons' candidate for election to state representative, and Mr. Atwood brought a suit against him seeking access to his own . . . his . . . to the Twitter page, it would be laughed out of court. It would be frivolous. On a 12 v. 6 motion, not on a legislative immunity motion. Yes, but this court in Swindle has noted that it's the legislative status, which is what's going on here, that Mr. Atwood is using Chuck Clemons' legislative status to create a public rights suit that otherwise wouldn't exist for anyone else with regard to . . . You still have not explained why he gets legislative immunity if, as you've strenuously argued, he's doing all of this in his individual capacity outside of his legislative capacity. Because it's . . . this Supreme Court has pointed out that the purpose of legislative immunity, just like with judicial immunity for the same types of suits, legislators and judges are immune from harassment suits, so directed at attempting to intimidate . . . That may be a byproduct, but you have to have the conduct, the conduct that's protected by the immunity principle. A prosecutor is not a person you want to harass for his or her work, but that prosecutor can't go out and do certain things that are not within the core functions of the prosecutorial task and be immune. Except what this court did in . . . and I see that . . . No, please go ahead. What this court did in Swindle, what the court acknowledged or observed is that in Swindle, it was a criminal indictment, but what the concern of this court in that case, it was his membership on a committee as a substitute, as a way to impute knowledge. So instead of having to prove certain facts, it was using his status as a legislator on a particular committee as a substitute for actually having to prove certain facts. And the court also noted that it's not just criminal that the court would be concerned about, that this could come up in civil actions as well, where it could be . . . legislative status could be used to And that is exactly what Mr. Atwood is trying to do here. There's actually two things going on. First of all, he's using the status as a state legislator. There's no, no allegation of policy. There's no allegation that it is a way that Chuck Clemons is acting for the state, which he would ultimately need to do to, to assert a 1983 action. All he says is he slaps a label, state representative on the case, and tries to turn it into a federal action. That is . . . That may be a 12b6 issue, but I'm not sure it's a legislative immunity issue, not with, not with the allegations as pled. But then what that leaves is, is that anyone can bring in a, bring a lawsuit to that, to intimidate a legislator, to seek to impose their views on a legislator, an individual's webpage. No, because if you're, no, because if you're right, you'll win on a 12b6 motion, but not on an immunity motion. Except the point of legislative immunity is to avoid the intimidation, the inconvenience, and the distractions from the legislative process in the first place. If Chuck Clemons has to go through the, the entire 12b6 process, then of course we think that we'll win on a 12b6 also. But the point of immunity is to protect the legislator on the front end from disgruntled, disgruntled constituents that have a vote at the, at the ballot box, and if they're unhappy with the way that their state legislator is operating, the, they have a, a remedy every two years. But it's not, litigation is not the place to try and intimidate a legislator. And the pleadings, several references to how Chuck Clemons voted. It has to do with the gun, the bringing an assault weapons ban to a debate on the floor of the House. That's why he was essentially trolling Chuck Clemons on, on his social media page. So this is an intimidation suit that wouldn't exist but for the fact that Chuck Clemons has the title state legislator. And I'm well into my. All right, thank you very much. You've saved all of your rebuttal time. Mr. Tannenbaum, thank you. Good morning. May it please the court. Eric Lindstrom for the appellee. The last time the Supreme Court had the opportunity to review an ex parte young action head-on was in 2011. A case called Virginia Office for Protection and Advocacy versus Stewart. It was a Scalia opinion. That case didn't involve any state law. It didn't involve a challenge to any state law. It was, it was an action against state officials for refusing to turn over records that were required by a federal law. There wasn't any analysis that the state officials were acting pursuant to some unlawful state law, regulation, or custom. It was a suit to enforce the federal law. In explaining the decision, Scalia wrote that the ex parte young has existed alongside our sovereign immunity jurisprudence for more than a century. Accepted as necessary to permit the federal courts to vindicate federal rights. And it rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign immunity purposes. And Justice Scalia took the opportunity to reaffirm the the standard from In determining whether ex parte young applies, the court need only apply a straightforward inquiry into one, whether the complaint alleges an ongoing violation of federal law, and two, whether the complaint seeks relief that can properly be characterized as prospective. Justice Scalia then summarized some exceptions that involve special state sovereignty issues. Maybe that can be a third element. My understanding is that Representative Clements is not trying to insert any three elements. Instead, he's trying to insert a fourth element. He's trying to say that in addition to those three things, the state official needs to be expressly or affirmatively furthering some state policy, and must have expressed statutory authority for whatever action he's engaging in. And there's just no, there's no authority under the 11th Amendment to do that sort of analysis. I understand your argument, but don't you have to step back and actually see if the person is exercising state power at all? So that's it. I think that that's a state action issue, which is a merits issue. The complaint alleges state action, alleges that these accounts were operated using House staff and alleges that they were titled under the state representative's official name, State Representative Chuck Clements, District 21 Facebook page. The complaint alleges that the representative issued official statements in his capacity as state representative through these sites. The district court found that those pleadings stated a cause of action and that there was sufficient allegations for state action. And there's nothing in the 11th Amendment jurisprudence that allows an appellate court on an interlocutory appeal to review whether or not there was sufficient pleadings of state action. That's a merits question, and we may get there, but we're not there on an interlocutory appeal. Let me ask you this question about Ex parte Young, which is where you started. Normally, in an appropriate Ex parte Young scenario, if the plaintiff wins, then there's not only declaratory relief, but prospective injunctive relief, barring the state official from doing something or telling the state official that he or she must do something, right? Correct. If you run this case all the way to the end, and let's say you win, any prospective injunctive relief is not telling Representative Clemens to do anything for the state. It's only for him individually. In other words, an injunction can't run past him and tell any other state representative or any other state senator or every other member of the cabinet what to do with the social media account, because whatever else he may have been doing, he's only acting for his own office and not for everybody else's office. Doesn't that cause a problem for your official capacity claim? I mean, it causes me stress that the more we're delayed with side appeals, that Representative Clemens is no longer going to be in office, and then we will no longer need prospective relief, and we'll get dismissed as moot. So, I mean, we're asking for—the complaint, you're right, is a very narrow relief, and it may become—there may no longer be an ongoing violation if Representative Clemens is no longer in office. I know, but that's not my question. I misunderstood. Let's say that Representative Clemens is going to get elected for the next eight years, so you're not going to have any mootness issues. You win. The injunction that you're asking for, if it's granted, if it's appropriate, can only run to him in his capacity as representative. He can't be issued an injunction that he now has to abide by that requires every other state representative who's not a party to the suit, every other state senator who's not a party to the suit, every other member of the state cabinet not a party to the suit, to abide by the injunction. If that's the way the injunction—if I'm right about the way the injunction is run, how can that be a proper official capacity claim? Because normally in an official capacity scenario, you tell somebody, the head of the Department of Children and Families, the Attorney General, the Surgeon General, whoever it may be, you are applying a state law in a way that violates the federal Constitution. Stop. And that person has to stop as an official for the entire state that he or she represented in an enforcement capacity. Doesn't seem to me that that's the scenario here with these social media accounts. Right, so the suit doesn't name the state of Florida. It doesn't name the Florida House. It's a suit against Representative Clemons individually, but also against Representative Clemons as the office holder of House District 21. And that's important because there's an allegation that it's, again, state action and that the office holder of House District 21 is using his name and resources to operate this account. You know, as a practical matter, it probably doesn't matter whether we proceed on an individual capacity or an official capacity, but it may matter for the completeness of a remedy if there needs to be some aspect of the House resources pulled into a remedy. But I agree. We're not seeking any relief broader than Representative Clemons and his House District 21 seat. So again, this concept of state action and the potential remedy issues are, I don't think, properly analyzed within the Ex Parte Young application, so long as the court is satisfied with the straightforward inquiry that there is an allegation of an ongoing violation of federal law and the relief is properly prospective. And the relief here is certainly prospective. We're not seeking damages. We're not seeking any change in the way the Florida legislature manages its affairs. We're only seeking a prospective declaratory and injunctive relief going specifically to Representative Clemons' conduct. The issue, I think, that Representative Clemons, the argument that he's making, I think, to me, I had a hard time understanding it, but I think the confusion comes from there being really two different kinds of Ex Parte Young cases. There's the Ex Parte Young cases that are truly a fiction. These are cases that go to striking down some state statute, and they do that using the state official as a proxy for, really, a state statute that's under attack, so that the Summit case is a good example of that, where the plaintiffs are really trying to stop the enforcement of the abortion statute, and they use state officials as a sort of proxy. The courts have allowed those cases to proceed on the Ex Parte Young theory, even though those cases are really suits against the state. There are a lot of other cases, though, that do not involve any challenge to a state law, regulation, or custom. There's no law that's being challenged. These are suits directly against the state official, acting in an official capacity, but not related to any unlawful rule or law, and so a good example of that, really, is the court's case in Luckey, which wasn't striking down any statute or regulation. It argued that Georgia judges were unreasonably delaying the appointment of criminal counsel and were unreasonably hurrying along counsel to finish these cases. That conduct, you know, was not expressly authorized by statute. There wasn't some statute that said, unreasonably delay appointing counsel and unreasonably hurry along these cases. It was a challenge to conduct, and that's what we're doing here, and I think when you read the cases that involve a challenge statute, you can obviously read those cases and cherry-pick quotes that say that the defendant needs to be authorized to enforce this challenge statute. To back up to Judge Jordan's question, in the Luckey case, didn't the ensuing relief apply to all Georgia judges, and wasn't it targeted at a group of judges rather than one particular judge in one particular seat? Isn't that a big difference between that case and this one? I think that that's right. I don't remember all of the defendants in that case. There were many, but it was an attack against the system, but the court allowed that claim to proceed. Our claim is much more narrower. It's only against one person's conduct. We have no systematic allegations in the complaint, and our remedy is not seeking any systematic relief. I think that's exactly the problem that we're facing in looking at your claim and deciding whether it's really an official capacity claim or whether it's simply against this one individual. Those seem like state actor questions. It seems like the argument is that there isn't any state action, which is a merits argument. We may get to that, but other than the straightforward test that Justice Scalia announced in the Verizon Maryland case, combined with this court's analysis in Luckey that you need to have a proper defendant, somebody who is responsible for the challenged conduct, other than that, I don't see any way that the court can reach whether or not there's state action or whether or not there's a cause of action properly alleged. I'm not sure that that's not a legal question, but in any event, I have a question about an issue we haven't talked about, which is your client also seeks relief under Section 1983 for violations of state law. Is that permitted? Can you get federal relief for violations of state law? This was not very well discussed before the district court at all, and so we're a little bit handicapped now. I wrote in our brief that we are not intending to pursue the state claims in any official capacity. The law is very clear that you cannot pursue state claims under the Ex Parte Young Theory, but the law is also very well clear that you can pursue state claims in an official capacity, but you can sue a public official for injunctive relief. Again, we're not asking for damages there. We're not asking to pursue Representative Clements in an official capacity, only in an individual capacity for the state claims. Did the district court do any analysis of whether under Florida law these particular claims would be allowed to go through? No, and it didn't do any analysis because there wasn't any argument that there was a failure to state a claim under Florida law on those claims. The only argument presented to the district court was the sovereign immunity and legislative immunity, and failure to state a claim for lack of state action, but there was no analysis of the merits of the Florida claims, and then, you know, finally, if I can just quickly go through the legislative immunity issue, I don't think it's very complicated. The Supreme Court decision in Hutchinson, I think, controls. Hutchinson makes clear that not everything that a state representative does is protected by legislative immunity. In fact, it's only a very narrow set of things. Legislative immunity derives from the speech and debate clause, and it really doesn't protect much more than that. Floor speeches, committee work, floor debates, and voting, and not much more. Hutchinson involved a constituent communication newsletter summarizing what the representative had done on the floor, and the court, you know, said that the constituent newsletter was not protected by immunity. The Gravel versus the United States is another similar case where the senator, I think this is the Golden Fleece Award, he awarded, he did the award on the sorry, Hutchinson is the Golden Fleece, Gravel is the Pentagon Papers. The same thing, though, that the floor speech was protected, the private communication of that was not. There's no more questions. Thank you. Mr. Teneman, let me tell you where I am, and I don't speak for my colleagues. I think you've raised a lot of issues about the merits. I don't think any of them are germane to your immunity arguments here, either Eleventh Amendment or legislative, and it seems to me that you likely lose on both of those. You may have questions about whether or not there can be an official capacity suit, about whether or not remedy is appropriate, whether or not the state law claims can go forward. All of those are merits questions, but we're here on an interlocutory appeal purely on immunity issues, and at least in my view, on the legislative side, you've got a long way to go. I wanted to let you know where I think I am so that you could try to persuade me otherwise. Thank you, Your Honor. So let me start back where we started. Let me address the official capacity and immunity arguments first. What I didn't discuss in my main time was Scott v. Taylor, where this court was very clear, regardless of the type of capacity, there is absolute legislative immunity when the suit is addressing or going to a legislative activity. What legislative activity, though? That's exactly the point, Your Honor, and that's where I was going to highlight, is that not even getting past the Eleventh Amendment immunity, which I think still applies because there hasn't been any policy identified by Mr. Lindstrom, there's nothing that's authorizing Representative Clements to run his webpages, they haven't pointed to anything. But beyond that, the legislative immunity, it's impossible for them to point out how a legislator acts officially but doesn't act legislatively. So if he's acting officially, he's acting legislatively, and as this court has noted, regardless of the type of relief you're seeking, you as a legislator are immune to the extent that someone, essentially, if he's a legislator in your official capacity, you're immune. That can't be right, given the Supreme Court cases on the limits of legislative immunity. Not everything you do in your legislative capacity makes you legislatively immune. No, but what the Supreme Court is saying in Brewster and Hutchinson and Gravel is that there's legislative activity, in which case you're acting legislatively. The things that we ordinarily would think about, voting, debating on the floor, the things that, we don't dispute the limited nature of legislative activity. But if it's not on the floor, if it's not a speech, if it's not a committee meeting, then the legislator, he's a legislator, but everything that an officer does doesn't make it public or official. So an officer going to the store, an officer buying a house, doesn't make that government activity. The same here goes to the merits of the claim, but not to whether or not you have immunity. For example, a legislator on the floor says horrible things about a person, right? In a debate about a bill, says horrible things. That's protected by legislative immunity. No questions asked. That person then goes out and is having a candidate forum with constituents and repeats the same things. There's no legislative immunity, right? That's correct. So that's this case. It's not this case, Your Honor. You may be right that there are merits problems with the case, but in terms of immunity, okay, tell me in one sentence, a law professor of mine used to try to use this tactic on us to try to get us to focus as crazy. I thought you might do this. So tell me in one sentence, finish this sentence for me. Representative Clemens has legislative immunity in this case because, finish it. Because he is only acting individually, doesn't have any authority as an individual state legislator to be acting outside the chamber on behalf of the state, which makes all his speech on his Twitter page as his own private speech. And this lawsuit is targeting that free speech, which the Supreme Court has said the government cannot force one person to allow another person's speech that alters their speech. That is a targeting of a state officer, a state legislator, because of his activity on the floor. And he's doing nothing on the floor in this case that he's being charged with. No, but the suit is in response. It doesn't matter what it's in response to. It does matter, Your Honor, because if these type of suits are allowed, it's going to subject individual state legislators to harassing lawsuits all the time based on their votes or things that they say. It's going to be a way to intimidate or get the legislators to make a different vote. If a legislator individually is going to have their free speech, their web presence, which is their own publication. So if in this case, the complaint had been silent about what Representative Clemens had done on the floor with regards to certain issues, you would not have a legislative immunity defense. I think that for purposes of this interlocutory appeal, yes. That doesn't make any sense to me. Not on the legislative immunity side. I think you've raised substantial questions about the merits and what sort of claims can be brought and what sorts of reliefs may or may not be available and the systemic problems that may ensue. But we really do appreciate the argument by both of you. Thank you very much.